FILED
2020 Oct-21  PM 03:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| TAMITRA J. COLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  2:19-cv-00056-JHE |
| | ) | |
| GESTAMP NORTH AMERICA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION[1]

Plaintiff Tamitra J. Cole ("Cole") brings this action against Defendants Gestamp North America, Inc. ("Gestamp NA") and Gestamp Alabama, LLC ("Gestamp Alabama") alleging that the defendants discriminated against her on the basis of her color in violation of Title VII of the Civil Rights Act of 1964, as amended, ("Title VII").[2] (Docs. 1 & 34).  After the close of discovery, Defendants moved for summary judgment.  (Doc. 58).  Cole responded in opposition to the motion (doc. 62), and Defendants filed a reply brief, (doc. 62).   Defendants have moved to strike the affidavits of Tamitra Cole and Crystal Harris, affidavits Cole submitted in support of her opposition to the motion for summary judgment.  (Doc. 64).  Thereafter, Cole filed a response (doc. 66), which the undersigned construed as a response to the motion to strike (doc. 68).  Both the motion for summary judgment and the motion to strike are fully briefed.  The undersigned has addressed the motion to strike (doc. 64) in a separate document and incorporated those findings herein.  For the reasons stated below, the motion for summary judgment (doc. 58) is **GRANTED**.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 29).

[2] The undersigned previously granted motions to dismiss brought by individual defendants Will Smith and Sonya B. Green. (Doc. 34).

## I. Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish there is a "genuine issue for trial." *Id.* at 324. (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in Plaintiff's favor when sufficient competent evidence supports Plaintiff's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mtn. Park, Ltd. v. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere

'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. Summary Judgment Facts[3]

### A.  Gestamp NA and Gestamp Alabama

Gestamp Alabama manufactures automotive parts and components at its production facility in McCalla, Alabama.  (Doc. 59-12 at 2, ¶ 3).  Gestamp Alabama is a subsidiary of Gestamp NA. Gestamp Alabama's Associate Handbook is distributed to and applies to all Gestamp Alabama associates, and Cole received a copy of the handbook.  (Doc. 59-1 at 17 (61:9-14), 84-94; doc. 59-2 at 1-21; doc. 59-3 at 1-5).  Gestamp Alabama has in effect an equal employment opportunity policy that strictly prohibits discrimination in all employment terms and conditions, including, but not limited to, discrimination based on race and color.  (Doc. 59-1 at 17, 18, 22 (61:9-14, 62:16-22, 80:2-9), 84-94; doc. 59-2 at 1-21; doc. 59-3 at 1-5).  Gestamp Alabama's Associate Handbook includes a Standards of Conduct policy, which outlines and describes specific requirements and expectations for associate conduct.  (Doc. 59-1 at 17 (61:9-14), 84-94; doc. 59-2 at 1-21; doc. 59-3 at 1-5).  The Standards of Conduct policy subjects an associate to discipline up to and including immediate termination for "[r]efusal to carry out work assignments (insubordination)."  (Doc. 59-1 at 17 (61:9-14), 84-94; doc. 59-2 at 1-21; doc. 59-3 at 1-5).  The Associate Handbook also includes a Job Opportunity policy, which outlines promotional opportunity for associates and specifically states that Gestamp Alabama will consider the following criteria, among other things,

---

[3] Because Cole failed to respond to any of the defendants' undisputed facts, those facts are properly deemed admitted.  FED. R. CIV. P. 56(e)(2)-(3).  However, the summary judgment facts only include those facts that are properly supported by the record.  The undersigned has also considered the evidence Cole offers in opposition to summary judgment, to the extent it is properly referenced in her brief and admissible.

when assessing an associate for promotion: "skill and ability, to perform the work" as well as length of service with Gestamp Alabama.  (Doc. 59-1 at 17 (61:9-14), 84-94; doc. 59-2 at 1-21; doc. 59-3 at 1-5; doc. 59-12 at 3, ¶ 7).

**B.  Cole's Employment at Gestamp Alabama**

Cole is an African-American female who describes her skin color as between brown and light brown.  (Doc. 59-1 at 32 (120:15-17)).  Before she started with Gestamp Alabama, Cole knew Andrea Matthews ("Matthews"), who was the ex-wife of Will Smith ("Smith"), the Director of Human Resources of Gestamp NA.  (*Id.* (119:17-120:7)).  Cole considered Matthews to have brown skin (*id.*), but Smith characterized it as lighter than Cole's skin color, (doc. 59-13 at 2, ¶ 4).

Cole was hired as an HR Generalist on August 8, 2016, (doc. 59-1 at 9-10 (27:4-6, 31:9-11), 80-81), after Smith had encouraged Cole to apply and had forwarded her resume to Gestamp Alabama HR Manager Traci Wells ("Wells").  (Doc. 59-13 at 3, ¶ 6; doc. 59-1 at 14 (47:4-9)).  Smith and Wells interviewed Cole and offered her the position as HR Generalist.  (Doc. 59-1 at 15-16 (52:19-55:15)).  At the time Cole was hired, she reported directly to Gestamp Alabama's HR Manager, Wells, who is African-American.  (*Id.* at 18, 42 (65:15-66:3, 161:7-10), 80-81, doc. 59-3 at 7).  Cole's HR Generalist job duties focused on employee relations, including time and attendance, administering Gestamp Alabama policy and procedure, managing effective employee and management communications, and management company events and luncheons.  (Doc. 59-1 at 17-18 (60:10-63:15), doc. 59-11 at 2, ¶ 4(c)).

At the time Cole started with Gestamp Alabama, there were three other African-American female HR Generalists at Gestamp Alabama reporting to Wells: Sonya Green, Michelle Averitte, and Claudia Games.  (Doc. 59-1 at 16-18, 42 (54:10-19, 56:6-15, 58:1-4, 63:16-64:21, 64:22-65:19, 161:7-10), doc. 59-1 at 80, doc. 59-3 at 7).

For the year 2016, although Cole assessed her own performance as "exceeds expectations" in every category, Wells evaluated Cole's performance and rated her at 3.8 out of 5, which falls within the "meets expectations" category. (Doc. 59-11 at 4, ¶¶ 6, 6(a), 8-12). Wells observed that Cole believed that she should be paid more and have a more senior position because of her Master's degree. (*Id.* at 4, ¶¶ 6(b)). Wells also observed that Cole believed her Master's degree should hold great weight and that Cole considered her performance as better than it actually was. (*Id.* at 4, ¶¶ 6(b), (c)).

Cole asserts that Wells and Smith told her she would be second-in-command in the HR Department at Gestamp and that other employees were aware of this. (Doc. 62 at 18-19). There is no indication of this in any of Cole's Gestamp Alabama's paperwork (doc. 59-1 at 80), and Gestamp Alabama's organizational charts show all HR Generalists at the same level reporting to the Gestamp Alabama HR Manager (doc. 59-3 at 7). Crystal Harris ("Harris"), who was a contract recruiter for Gestamp, testified that when she was first assigned to Gestamp Alabama, she was to report to Cole, but that Cole and Green were both HR Generalists and had quality responsibility for Human Resources. (Doc. 64 at 74, ¶ 5). Wells considered Green the "second-in-command" in the Gestamp Alabama HR Department and assigned her important and confidential duties not assigned to the other HR Generalists. (*Id.* at 3-4, ¶¶ 4(b), (c)).

## C. Cole's Failure to Promote Allegations

Cole alleges Defendants discriminated against her based on her color by denying her a promotion to the HR Manager position. (Doc. 47 at ¶¶ 6-7. 14-15, 17-24). In November 2017, Wells voluntarily resigned her position as HR Manager of Gestamp Alabama. (Doc. 59-11 at 2, ¶ 2). While working out her notice period, Wells recommended that Green perform the Interim HR Manager role while management made an official selection for the position. (Doc. 59-11 at 5, ¶

7(b); doc. 59-1 at 24 (87:20-88:4); doc. 59-13 at 5, ¶ 14).  Wells told Smith that Green was ready to move into the HR Manager position on a full-time basis.  (Doc. 59-13 at 5, ¶ 14; doc. 59-11 at 7; doc. 59-9 at 4, ¶ 8).  Wells considered Green to be a much better candidate than Cole and recommended her based on her experience, personality, professionalism, and performance.  (Doc. 59-11 at 5, ¶ 7(a)).  Green had more than seven years of experience working for Gestamp Alabama and over twenty-five years of general human resources experience.  (Doc. 59-11 at 3, ¶¶ 5, 5(a); doc. 59-12 at 4, ¶ 11).  Vice President of HR Melissa Horn, a Caucasian female, and Plant Manager Bob Day agreed with the decision to place Green in the interim position given Green's experience and knowledge, and Green was named interim HR Manager during the hiring process.  (Doc. 59-9 at 2-3, ¶¶ 2, 5; doc. 59-13 at 5, ¶ 15).

The HR Manager position at Gestamp Alabama is responsible for all Human Resources functions at the facility, including developing, implementing and coordinating company policy, recruiting, training, compliance, benefit administration, payroll, managing employee relations, and supervising all HR Generalist employees.  (Doc. 59-9 at 3-4, ¶ 6, 9-10).  Defendants assert that, while a four-year or post-graduate degree is "preferred" for the HR Manager position, the primary considerations for the position are the candidate's experience, performance for internal candidates, and an overall assessment of the candidate's capabilities.  (Doc. 59-9 at 4, ¶ 7; doc. 59-13 at 6, ¶ 16; doc. 59-1 at 25-26 (92:12-96:12); doc. 59-4 at 8-9).   Cole argues that the job description requires a four-year degree.  (Doc. 62 at 2).  Specifically, she points to the "Education and Experience" section of the job description, which states "4 year degree, post graduate preferred." (Doc. 59-4 at 8).  Cole also points to the question on the application that asks "Do you meet the minimum education requirement for the positions as outlined in the job description[,]" arguing this question is indicative of an education requirement.  (Doc. 62 at 2).  The job description also listed

"8-10 years' experience" under the education and experience requirements.  (Doc. 59-9 at 9).

Three candidates applied for the HR Manager position: Cole, Green, and an external candidate, Marcene Emmett ("Emmett").  (Doc. 59-9 at 4, ¶ 8).  Horn interviewed each of the three candidates in November 2017, and Horn and Gestamp NA President John Petroni ("Petroni"), a Caucasian male, considered their respective qualifications and experience, and determined that Green was the most qualified candidate for the position based on her performance and experience as well as her more extensive history with Gestamp Alabama.  (Doc. 59-9 at 5, ¶ 11; doc. 59-1 at 26-27 (97:22-100:5).  When asked at her deposition "Do you know who made the decision that [Green] would be promoted to HR Manager[,]" Cole answered "No."  (Doc. 59-1 at 27 (99:22-100:1)).  To the extent that Cole now asserts that Smith or someone other than Horn and Petroni made the decision to promote Green, those statements were stricken under the sham affidavit doctrine.  *See Van T. Junkins and Assocs., Inc.*, 736 F.2d at 656.

Although Cole had a bachelor's degree from the University of Alabama and a Master's degree from the University of Phoenix (doc. 59-13 at 17), she had only been employed by Gestamp Alabama for a little over a year at the time she applied for the HR Manager position, whereas Green had a total of seven years with Gestamp Alabama and over twenty-five years in human resources generally.  (Doc. 59-9 at 5, ¶ 10; doc. 59-12 at 4, ¶ 11).  At her deposition, Cole testified that she did not know what was asked or said in any interviews or why any selection decisions were made.  (Doc. 59-1 at 26-27, 41 (94:1-97:10, 97:22-98:14, 99:22-100:5, 156:11-18, 157:1-12)).  Cole further testified that she does not know anything about Green's employment history, performance history, or other qualifications, except that Green did not have a four-year degree.  (Doc. 59-1 at 27, 39-41 (97:22-98:14, 99:22-100:5, 148:17-151:23, 156:11-18, 157:1-12)).  Cole began her work in HR in 2012 as an HR Administrator for another company.  (Doc. 59-13 at 16).

Neither Horn, Smith, nor Craig Lane ("Lane"), a Caucasian male who is the current Plant Director at Gestamp Alabama's McCalla facility, considered Cole to have noticeably lighter skin color than Green.  (Doc. 59-9 at 2, ¶ 3; doc. 59-13 at 9, ¶ 26; doc. 59-10 at 2, 4, ¶¶ 2, 11).  They all considered Green and Cole to have similar skin colors.  (Doc. 59-9 at 2, ¶ 3; doc. 59-13 at 9, ¶ 26; doc. 59-10 at 4, ¶ 11).  HR Generalist, Claudia James, who remains employed at Gestamp Alabama, has lighter skin than Cole.  (Doc. 59-13 at 9, ¶ 26; doc. 59-9 at 2, ¶ 3; doc. 59-12 at 9, ¶ 26; doc. 59-1 at 16 (56:23-57:9)).  The company photographs of Green and Cole demonstrate similar skin colors, while James's skin color is lighter than either of them.  (Doc. 59-12 at 9, 71 (Cole), 73 (Green), 75 (James), ¶ 26).  Cole testified that no one told her that the decision to promote Green to the HR Manager position was based on race or color and she was not sure if anyone told her anything to lead her to that conclusion.  (Doc. 59-1 at 41 (156:11-18, 157:1-12)).  Horn assets that neither Cole's race nor color played any role whatsoever in the decision not to promote Cole or any other employment action or decision with respect to her.  (Doc. 59-9 at 7, ¶ 16).

### D.  Cole's Termination

Cole alleges Defendants discriminated against her based upon color by terminating her employment.  (Doc. 47 at ¶¶ 21, 25-28).  Following the decisions to promote Green to interim HR Manager role and later to the HR Manager position, Green and Smith reported Cole's attitude, performance, and willingness to work as team began to decline.  (Doc. 59-12 at 4, ¶14; doc. 59-13 at 7, ¶ 19).

Cole states in her affidavit that Green made comments comparing the texture of the women's hair and would say that Cole had hair like a white person and did not know anything about black hair.  (Doc. 62 at 9).  Specifically, Green asked Cole what kind of shampoo she used.

(*Id.*).  Cole told her Pantene.  (*Id.*).  Green asked if she used the white or brown bottle.  (*Id.*).  Cole answered that she used the white bottle, and Green said "see, that's what I'm talking about."  (*Id.*). Cole also asserts that Green made comments about which black employees would "work in the house" and who would "work in the field."  (*Id.*).  Cole asserts that this was "teasing" about Cole's lighter skin color.[4]

After not being chosen for the HR Manager position, Cole began seeking different employment.  (Doc. 59-1 at 35, 36 (130:1-131:10, 134:19-135:20); doc. 59-6 at 10-15; doc. 59-12 at 6, ¶ 7).  Cole applied internally for an open administrative assistant position and applied to other external companies as well.  (*Id.*).

On one occasion in early January 2018, soon after Lane became Plant Director, Lane, Smith, and Petroni had a dinner meeting at a restaurant near the Gestamp Alabama McCalla facility.  (Doc. 59-10 at 3, ¶ 5).  Lane forgot his glasses at the restaurant, and Smith asked Cole to go to the restaurant to get the glasses for him.  (*Id.*; doc. 59-13 at 7-8, ¶ 20; doc. 59-1 at 36-37 (135:21-138:3)).  Cole refused to do so and stated that such a task was not in her job description, and another HR Generalist, Claudia James, went to pick up the glasses.  (*Id.*).

While Cole's specific responsibilities included keeping up with time and attendance for Gestamp Alabama employees and issuing disciplinary warnings when appropriate, in March 2018, Green became aware that the company was behind in issuing nearly one hundred disciplinary warnings and terminations based on attendance, which was Cole's responsibility to initiate, and

---

[4] Although the undersigned granted Defendants' motion to strike as to much of Crystal Harris's March 9, 2020 affidavit, there is also a January 2020 affidavit from Harris.  In the initial affidavit, Harris states that "[a]t no time have I heard or been made aware of anyone at Gestamp Alabama or any Gestamp entity refer to Mrs. Cole's skin color or make any employment-related decision based on Mrs. Cole's skin color. . . .  Green never said anything about my skin color . . . ."  (Doc. 64 at 76, ¶ 9).

which caused significant problems to correct.  (Doc. 59-12 at 5-6, ¶ 15; doc. 59-13 at 8, ¶ 21).

On March 15, 2018, Manager Mel Rose ("Rose") emailed and called Cole to coordinate a training lunch for employees on his Quality Team.  (Doc. 59-6 at 18-21).  The following week, Rose emailed Cole to ask her for the lunch receipt, to which Cole told Rose to come get it from her office.  (*Id.*).  Then, without any prompting or other request from Rose, Cole emailed him on March 26, 2018, and said, "Please use your card to order your lunches or give your card information to one of your quality associates to order your lunch.  I have a ton of other things to do and I cannot keep running to meet drivers with lunches to take up."  (*Id.*; doc. 59-1 at 37 (138:4-140:18); doc. 59-12 at 6-7, ¶ 18).  The next day, on March 27, 2018, Green (HR Manager) asked Cole via email to assist the catering restaurant with set up for an employee dinner taking place that evening.  (Doc. 59-12 at 7, ¶19; doc. 59-7 at 2-3).  Cole responded, "Seeing as how, I am usually the one to come back to assist, I'm sure someone else can assist tonight."  (Doc. 59-7 at 2-3; doc. 59-1 at 37 (140:21-141:5)).  Green also asked Cole if she had selected employees to attend the next employee dinner, and Cole responded, "You had the container to pull the names. . . .  But to answer your question, no, I did not pull any names."  (*Id.*).  Green found these communications from Cole to be rude, uncooperative, and insubordinate, particularly because managing company events like employee lunches and dinners fell within Cole's job duties and responsibilities.  (Doc. 59-12 at 8, ¶ 20; doc. 59-1 at 17-18 (60:10-63:15)).  Green forwarded these conversations to Smith, who suggested she discuss Cole's conduct with Horn and Lane.  (Doc. 59-13 at 8-9, ¶¶ 22-23).

Green reported Cole's failure to perform her duties and uncooperativeness to her superiors, Plant Director Lane and Vice President of Human Resources Horn.  (Doc. 59-12 at 7-8, ¶¶ 20-21).  Green notified Lane and Horn that she believed Cole was unwilling to work with Green as her superior.  (*Id.*; doc. 59-9 at 6, ¶ 12; doc. 59-10 at 4, ¶ 9, doc. 59-1 at 37-38 (141:6-141:19)).  Horn

and Lane directed Green to terminate Cole's employment based on her conduct.  (Doc. 59-9 at 5-6, ¶12; doc. 59-10 at 4, ¶ 10).

On April 6, 2018, Green, along with Operations Manager Rich Metcalf ("Metcalf"), met with Cole and informed her that she was being terminated due to these issues.  (Doc. 59-1 at 35-38 (131:11-134:18, 141:6-143:15); doc. 50-6 at 16-1; doc. 59-12 at 8, ¶ 21).  No Caucasian or darker-skinned HR Generalist under Green's supervision had engaged in insubordinate behavior like Cole.  (Doc. 59-12 at 8, ¶ 22; doc. 59-9 at 6, ¶ 13; doc. 59-1 at 40-41 (152:4-153:4; 156:8-10)).  Cole admits she does not know the details of other HR Generalists' performance or work histories.  (Doc. 59-1 at 18 (63:16-65:9)).  Cole testified that nobody told her that her termination was based on her race or color and no one said anything that led her to that conclusion.  (Doc. 59-1 at 41-42 (157:13-19, 158:18-159:8, 159:17-160:2)).

Following Cole's termination, Belinda Walker ("Walker"), an African-American female, was hired as an HR Generalist in Cole's former role.  (Doc. 59-1 at 41-42 (157:20-158:17)).  Smith and Horn both observed Walker's skin color to be similar to that of Cole's skin Color.  (Doc. 59-9 at 6, ¶14; doc. 59-13 at 9, ¶ 25).  Cole testified Walker's skin color was similar to Green and Will's but darker than hers.  (Doc. 59-1 at 41-42 (157:20-158:17)).

### E.  Cole's EEOC Charge of Discrimination

On June 19, 2018, Cole filed a Charge of Discrimination with the EEOC alleging race and color discrimination as well as retaliation in violation of Title VII.  (Doc. 59-14 at 2-5).  Cole filed her Charge against "Gestamp" located at 7000 Jefferson Metro Parkway, McCalla, Alabama 35111, which is the physical location for Gestamp Alabama.  (*Id.*).  Cole does not mention or reference Gestamp NA in her Charge.  (*Id.*).  Gestamp NA did not receive notice of Cole's Charge and did not have the opportunity to conciliate on its own behalf in the EEOC proceedings.  (*Id.*).

### III. Analysis

#### A. Cole Failed to Exhaust Administrative Remedies Against Gestamp NA

Assuming Cole could establish an employment relationship with Gestamp NA, Defendants contend Cole's Title VII claims against Gestamp NA must be dismissed because she failed to timely exhaust administrative remedies.  (Doc. 60 at 15-16).  As a condition precedent to bringing a civil action pursuant to Title VII, an individual must file a charge "within one hundred and eighty days after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1).  Defendants argue Cole did not exhaust her administrative remedies against Gestamp NA because she did not mention Gestamp NA in her EEOC Charge and only mentioned "Gestamp," providing the Gestamp Alabama address in McCalla.  (Doc. 60 at 16).

A party not named in an EEOC charge cannot be named as a defendant in a subsequent suit.  *See Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1358 (11th Cir. 1994); *see also* 42 U.S.C. § 2000e-5(f)(1) (authorizing suit "against a respondent named in the charge").  Defendants assert that Gestamp NA did not receive notice of Cole's EEOC charge and thus did not have an opportunity to conciliate on its behalf.  (Doc. 60 at 16).

Although there may be a situation in which a parent company could receive notice of an EEOC charge, Cole fails to respond to Defendants' failure to exhaust argument.  (*See* doc. 62).  Without any evidence Gestamp NA received notice of Cole's claims, Cole's Title VII claims against Gestamp NA are due to dismissed for failure to exhaust.  *See Floyd v. Home Depot U.S.A., Inc.*, 274 Fed. App'x 763, 764-66 (11th Cir. 2008) (citing *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995)) (affirming dismissal of grant of summary judgment based on district court's finding that plaintiff had abandoned her claim).  Furthermore, even if Cole had exhausted her claims against Gestamp NA, the following analysis would apply to support dismissal

12

of those claims.

### B.  Cole's Discriminatory Failure to Promote Claim

Cole asserts she was denied the HR Manager position in favor of Green because of her lighter skin color.  To state a *prima facie* failure-to-promote claim, Cole must present evidence that (1) she is a member of a protected class; (2) she applied and was qualified for the position sought; (3) she was rejected in spite of her qualifications; and (4) Defendant promoted an individual outside of the plaintiff's protected class.  *Johnson v. Bd. of Trustees of Univ. of Ala.*, 191 F. Appx. 838, 843 (11th Cir. 2006).  Once a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for the challenged employment action.  *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (citing *Combs v. Planation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997)).  If the defendant articulates one or more such reasons, the presumption of discrimination is eliminated, and the plaintiff then must come forward with evidence sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment action.  *Id.*  If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim.  *Id.* at 1024-25.

#### 1.  Cole's *Prima Facie* Case

Defendants contend that Cole cannot establish a *prima facie* case for discrimination based on not being promoted to HR Manager because (a) she was not qualified for the HR Manager position and (b) she cannot establish Green was outside of her protected class.  (Doc. 60 at 17-19).  Defendants contend Cole was not qualified for the HR Manager position because the position

required eight to ten years' experience in HR, and Cole had only been working in HR for five years. (Doc. 60 at 18).  Cole does not directly rebut this argument, but asserts she "met the job requirements" and was "fully qualified" for the position because she had a Master's degree and "substantial work on her doctorate." (Doc. 62 at 2).  The HR Manager job description is unclear as to whether a four-year degree is required. (Doc. 59-9 at 9).  Under the heading "Education and Experience," it states "4 year degree, post graduate preferred." (*Id.*).  As Cole suggests, this can logically be read as a four-year degree being required and a post-graduate degree being preferred.  However, it can also be logically read as Defendants contend, that neither degrees are required, but both degrees are preferred.  Notwithstanding this disagreement, what is undisputed is that the HR Manager position required eight to ten years' experience, and Cole only started working in HR in 2012 (doc. 59-13 at 16), approximately five years before the promotion opportunity.  Because of this, Cole did not have the requisite HR experience to be qualified for the promotion.  Cole broadly states she was "qualified," but does not directly address this experience requirement.  The undisputed evidence demonstrates Green met this experience requirement and Cole did not. (Doc. 59-11 at 3, ¶¶ 5, 5(a); doc. 59-12 at 4, ¶ 11).  Although Defendants argue Cole cannot establish that someone outside of her protected class was promoted, for purposes of summary judgment, Cole has presented sufficient evidence that Green could have been viewed as having darker skin than Cole.

Because at the time she was considered for the promotion, Cole did not have eight to ten years' experience, she cannot establish she was qualified for the position and therefore cannot establish a *prima facie* case of discrimination.  However, even if Cole was qualified for the position, and therefore could establish a *prima facie* case of discrimination, her failure-to-promote claim would fail because Cole cannot establish that Defendants' reasons for promoting Green were

14

pretextual.

### 2. The Legitimate, Non-Discriminatory Reasons for Promoting Green Were Not Pretextual

Three candidates applied for the HR Manager position: Cole, Green, and an external candidate, Marcene Emmett ("Emmett"). (Doc. 59-9 at 4, ¶ 8). Horn, VP of HR, interviewed each of the three candidates in November 2017, and Horn and Petroni, Gestamp NA President, considered their respective qualifications and experience, and determined that Green was the most qualified candidate for the position based on her performance and experience as well as her more extensive history with Gestamp Alabama. (Doc. 59-9 at 5, ¶ 11; doc. 59-1 at 26-27 (97:22-100:5). These are legitimate, non-discriminatory reasons that meet the defendants' burden of production.

To survive summary judgment, Cole must present evidence that these reasons are pretextual, meaning they are a cover for discrimination. Cole fails to point to sufficient evidence to create a genuine issue of material fact regarding whether each of these articulated reasons is pretextual, and there is absolutely no evidence in the record that Horn or Petroni ever expressed any color-based bias against Cole or anyone else.[5]  Notably, Cole testified at her deposition that she did not know why Green was chosen for the position and that she had no evidence that color was the real reason she was not picked for the position. (Doc. 59-1 at 41 (156:11-18, 157:1-12)).

Instead, the record shows that Green had been with the company for seven years, and Cole had only been there one year. Green had twenty-five years' experience in HR, and Cole had five years' experience in HR. There is nothing in the record to undermine Defendants' conclusion that

---

[5] Interestingly enough, Cole spends significant time in her brief discussing the privilege of light skin over dark skin and how people of all races experience that. (Doc. 62 at 3-5). Even if Cole's arguments were persuasive, they would support the implication that the white decisionmakers would prefer a light-skinned employee, such as Cole; not that they would be subconsciously biased against her.

Green was the superior candidate for the position.  Cole places a lot of emphasis on her education, which she believes is superior.  While educational background is one difference between Cole and Green, in light of all the other evidence, and the absence of any evidence of color bias on the part of the decision makers, Cole cannot demonstrate "that the disparities between [Green's] and [her own] qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Webb v. IBM*, 458 F. Appx. 871, 876 (11th Cir. 2012).  For these reasons, summary judgment is due on Cole's failure to promote claim.

### C.  Cole's Discriminatory Termination Claim

Cole contends Defendants terminated her employment because of her lighter skin color and argues in her brief that Green was the individual with color bias who fired her. (doc. 62 at 6). To state a *prima facie* case for color discrimination, Cole must prove (1) she is a member of a protected class; (2) she was qualified for her job; (3) she was subjected to an adverse employment action; and (4) the defendant employer treated a similarly-situated employee(s) outside her protected class more favorably.  *See Burke-Fowler v. Orange Cty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006); *Wilson v. B/E Areospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004).

If a plaintiff establishes a *prima facie* case, the burden then shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for the challenged employment action, here Cole's termination.  *See Mazzeo v. Color Resolutions Intern.*, LLC, 746 F.3d 1264, 1270 (11th Cir. 2004).  If the employer satisfies this burden, then the plaintiff must provide sufficient evidence that the proffered reason is merely a pretext for unlawful discrimination. *See id.* To discredit the defendant employer's explanation, the "plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered

legitimate reasons for its action that a reasonable factfinder could find all of those reasons unworthy of credence." *Gresham v. City of Florence, Ala.*, 319 F. Appx. 857, 864 (11th Cir. 2009) (quoting *Watkins v. Sverdrup Tech., Inc.*, 153 F.3d 1308, 1314 (11th Cir.1998)).

### 1.   Cole's *Prima Facie* Case

Defendants assert that Cole cannot establish a *prima facie* case for discriminatory termination because she cannot show that Defendants treated similarly-situated individuals more favorably or any other evidence of discrimination based on her color.  (Doc. 60 at 22).  Generally, "[t]o make a comparison of [a plaintiff's] treatment to that of [someone outside of the plaintiff's protected class], [the plaintiff] must show that [s]he and the employees are similarly situated in all relevant respects." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).  "To meet the comparability requirement a plaintiff is required to show that [s]he is similarly situated in all relevant aspects to the non-minority employee." *Silvera v. Orange Cty. Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001).  It is necessary for a comparator to be "nearly identical" to the plaintiff "to prevent courts from second-guessing a reasonable decision by the employer." *Wilson*, 376 F.3d at 1091; *see also McCann v. Tillman*, 526 F.3d 1370, 1374 (11th Cir. 2008).

Cole fails to point to any darker-skinned or white HR Generalist who displayed similar poor performance or insubordinate behavior during the relevant time period, but was not terminated.  Without this evidence, Cole cannot establish a *prima facie* case of discriminatory termination.   Although it is plausible for one light-skinned African-American to be discriminated against, but not another, the evidence shows James, who has lighter skin than Cole, was employed at Gestamp Alabama prior to Cole and remains employed at Gestamp Alabama.

### 2.   Defendants' Legitimate, Non-Discriminatory Reasons are Not Pretextual

Even if Cole could present evidence to establish a *prima facie* case of discriminatory

termination, she has failed to present evidence that Defendants' legitimate, non-discriminatory reasons for her termination were pretextual.  Defendants have presented evidence that Cole was terminated because of poor performance and insubordinate behavior.  In January 2018, Cole refused to take the plant director his glasses at a restaurant meeting with the President of Gestamp NA and was disrespectful in her refusal.  (Doc. 59-10 at 3, ¶ 5; doc. 59-13 at 7-8, ¶ 20; doc. 59-1 at 36-37 (135:21-138:3)).  In March 2018, Green discovered that Cole had failed to generate over one hundred attendance-related disciplinary notices, which caused a problem to correct.  (Doc. 59-12 at 5-6, ¶ 15; doc. 59-13 at 8, ¶ 21).  That same month, Cole was rude to Gestamp Alabama Manager Rose and essentially refused to do her job to coordinate employee lunches.  (Doc. 59-6 at 18-21; doc. 59-1 at 37 (138:4-140:18); doc. 59-12 at 6-7, ¶ 18).  On March 27, 2018, Cole refused Green's request to set up an employee dinner and was dismissive and rude about having not drawn names for the next employee dinner.  (Doc. 59-12 at 7, ¶19; doc. 59-7 at 2-3; doc. 59-1 at 37 (140:21-141:5)).   These behaviors are legitimate, non-discriminatory reasons for Cole's termination sufficient to shift the burden to Cole to present evidence that these reasons were a pretext for discrimination.

At Smith's suggestion, Green reported Cole's failure to perform her duties and uncooperativeness to her superiors, Plant Director Lane and VP of HR Horn.  (Doc. 59-12 at 7-8, ¶¶ 20-21).  Green notified Lane and Horn that she believed Cole was unwilling to work with Green as her superior.  (*Id.*; doc. 59-9 at 6, ¶ 12; doc. 59-10 at 4, ¶ 9, doc. 59-1 at 37-38 (141:6-141:19)).  Horn and Lane directed Green to terminate Cole's employment based on her conduct.  (Doc. 59-9 at 5-6, ¶12; doc. 59-10 at 4, ¶ 10).

The evidence establishes that Horn and Lane made the termination decision.  There is absolutely no evidence that either harbored any color bias.  However, it is true that Cole would not

have been in the figurative hot seat with Horn and Lane if Green had not notified Lane and Horn about Cole's behavior, poor performance, and unwillingness to work with Green as her supervisor. For that reason, the undersigned will examine the evidence regarding Green's motivation.

In *Staub v. Proctor Hospital*, 562 U.S. 411 (2011), the Supreme Court endorsed the cat's paw theory by defining the circumstances under which an employer could be liable when the decision-maker has no discriminatory animus, yet is influenced by a subordinate supervisor's action that is the product of such discriminatory animus. The Court held that the employer could be liable only if the subordinate supervisor (1) performs an act motivated by discriminatory animus that is intended to cause an adverse employment action, and (2) that act is a proximate cause of the ultimate employment action. *Staub*, 562 U.S. at 422.   Cole does not cite *Staub* or reference "cat's paw theory." (*See* doc. 62).  However, out of an abundance of caution, the undersigned will consider whether there is any evidence Green demonstrated color-based animus against Cole that contributed to her termination.

Cole makes several unsupported assertions that Green harbored color-based bias.  Many of Cole's statements in her affidavit were stricken as unfounded, speculative, and contradicted by her prior sworn testimony.  There is evidence that Green made comments indicating that there were color differences among the black employees and that Cole had "white people hair."  These were stray remarks not uttered in the context of decisions at issue and not sufficient circumstantial evidence of bias to provide a reasonable basis for a finding of racial discrimination in Cole's termination. *See Ash v. Tyson Foods, Inc.*, 190 F. App'x 924, 926 (11th Cir. 2006).  What remains undisputed is that no other employee in the HR department engaged in repeated insubordinate behavior like Cole.   There is simply insufficient evidence to raise any presumption of

discrimination in Cole's termination.[6]

### IV. Conclusion

For the reasons stated above, the undersigned finds there is no genuine issue of material fact, and Defendants are entitled to summary judgment as a matter of law.  The motion for summary judgment is **GRANTED**.  A separate order will be entered.

DONE this 21st day of October, 2020.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

---

[6] The above-applied framework is not the only way for a plaintiff to survive summary judgment in a discrimination case. *See Smith v. Lockheed-Martin Corp*., 644 F.3d 1321, 1328 (11th Cir. 2011). Rather, the plaintiff can survive summary judgment "if [s]he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id.*  A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decision-maker. *Id.*  As noted throughout this analysis, there is simply insufficient evidence to raise a presumption of color-based discrimination.